**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Roy E. Spears, | ) | |
| Plaintiff, | ) ) | No. CIV 18-126-TUC-CKJ |
| vs. | ) ) | **ORDER** |
| Arizona Board of Regents, et al., | ) ) | |
| Defendants. | ) ) | |

Pending before the Court is the Motion to Dismiss ("MTD") (Doc. 27) filed by State Defendants and the Motion for Preliminary Injunction (Doc. 35) filed by Plaintiff Roy E. Spears ("Spears"). The parties have thoroughly presented the facts and briefed the legal issues. Therefore, the Court declines to set this matter for oral argument. *See* LRCiv 7.2(f); 27A Fed.Proc., L. Ed. § 62:367 (March 2016) ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion.");

I. *Factual and Procedural Background*[1]

Spears attended the 2017 Festival of Books on the University of Arizona ("UA") campus mall ("UA Mall") on March 17, 2017. Within minutes of arriving on campus, "booming sound amplification immersed Spears." Amended Complaint ("FAC") (Doc. 7, ¶ 33). Spears put on his GoPro, amplification system, headset microphone, placed Gospel

---

[1]Unless otherwise stated, the facts are taken from Spears' First Amended Complaint (Doc. 7).

signs around a tree, held one Gospel sign, and began to speak at approximately 12:20 p.m.

Within seven minutes, Rebekah Salcedo ("Salcedo"), a UA "First Amendment Monitor," approached and said, "I'm going to ask you to turn off your microphone. The only sound permission for the Festival are the sound stages. You can certainly be here and talk with people but not with the microphone." *Id.* at ¶ 35. She further stated, "The permit for this weekend for the sound stages were given to the sound stages. There is no permits for amplified sound[.]" *Id.* at ¶ 37. When Spears disagreed with "Salcedo's arbitrary interpretation of the long-standing weekend UA policy allowing amplification being superseded by the presence of the Festival[,]" *id.* at ¶ 38, Salcedo replied, "No, it is not arbitrary because the Festival of Books reserved the stage and the sound licenses for this weekend were given to the stages." *Id.* at ¶ 39. The FAC alleges:

> 84. Though the UA admits that sound amplification is allowed on the weekends, they adopt a curious policy for banning all amplified speech from either UA students or the public during the Festival. In fact, no one without a permit can amplify sound during the Festival except those who are officially part of it: the authors, musicians, non-profits, vendors, etc.

> 85. The UA accomplishes this permitting scheme through an ad hoc, unwritten and unnamed policy referred to as the "sound amplification policy" and is only applicable once a year during the Festival.

> 86. Though UA officials refer to this vague policy when denying students and the public's first amendment right to amplify during the Festival, they cannot produce official documentation detailing precisely what this policy states—it does not exist except, perhaps, in a single section on a Mall form titled, "The University of Arizona Commercial and Campus Use Activity Form." [11]

> [11] https://drive.google.com/open?id=0B9m1G5k2wXI6TDB6QzJaaW1uQn JPZ1 hpSU5vajBuU2tYR0Jj[.] See middle of page 1, "Sound Amplification?"

FAC (Doc. 7, ¶¶ 84-86).

Dean of Students Kathy Adams Riester ("Riester") arrived several minutes later. Riester told Spears his amplifying sound was disruptive to the Festival of Books and that volunteers from the Festival had complained.[2]

---

[2]The Court notes that Spears objects to the characterization by Defendants of his conduct as "disruptive." A "disruption must be an 'actual disruption' and not 'any violation

Spears was given three warnings, but he continued to speak with amplification. University of Arizona Police Department ("UAPD") Officer Ian Theel ("Theel") advised Spears that, if he continued to speak using amplification, he would face arrest if he failed to obey Riester. After Spears continued to speak using amplification, Spears was arrested. Spears was subsequently stripped of his possessions and placed in the police cruiser of UAPD Officer Picktrom ("Picktrom"). Picktrom transported Spears to the Pima County Adult Detention Center. Spears was held for nine hours. On March 28, 2018, Spears was found guilty of third-degree criminal trespass. Spears has appealed his conviction.

On March 8, 2018, Spears filed a civil rights Complaint (Doc. 1) with this Court. On May 29, 2018, Spears filed his FAC (Doc. 7). The FAC lists the Arizona Board of Regents ("ABOR"), Brian Seastone ("Seastone") in his official capacity as Chief of Police for the University, Greg Ewer ("Ewer"), individually and in his official capacity as police officer for the UAPD, Theel, individually and in his official capacity as police officer for the UAPD; Picktrom, individually and in his official capacity as police officer for the UAPD, Riester, individually and in her official capacity as Dean of Students for the UA, as Defendants. Spears alleges claims of Count I, violation of freedom of speech, Count II, violation of due process clause, Count III, violation of Fourteenth Amendment right to equal protection, Count IV, intentional infliction of emotional distress, Count V, abuse of process, Count VI, false light, Count VII, violation of Fourth Amendment - arrest without probable cause, and Count VIII, false arrest/false imprisonment.

On July 5, 2018, Defendants filed a Motion to Dismiss (Doc. 27). Spears has filed a

of . . . decorum' or a 'constructive disruption, technical disruption, virtual disruption, nunc pro tunc disruption, or imaginary disruption[.]'" *Fitzgerald v. Cty. of Orange*, 570 F. Appx 653, 657 (9th Cir. 2014). The FAC alleges Spears was informed that his sound amplification was disruptive to the sound amplification by permitted persons/entities and that volunteers from the Festival of Books had complained about the sound disrupting the ability of people to do their business. Spears asserts in his response to the Motion to Dismiss that it is not credible that three persons complained within one minute and 39 seconds of Spears beginning his amplified speech.

response (Doc. 31) and Defendants have filed a reply (Doc. 34).

On December 18, 2018, Spears filed a Motion for Preliminary Injunction (Doc. 35). Defendants have filed a response (Doc. 38) and Spears has filed a reply (Doc. 40).

## II. *Requirement that Action State a Claim on Which Relief Can be Granted*

Defendants assert Spears has failed to state a claim against them. A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a). A complaint must set forth a set of facts that serves to put defendants on notice as to the nature and basis of the claim(s). The United States Supreme Court has found that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id*. at 555; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss[.]"). Further, Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. *Twombley*, 127 S.Ct. at 1965 n. 3. The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action." *Id*. at 1965.

The Court considers the Complaint in light of *Twombly* and must determine if Spears has "nudge[d] [the] claims across the line from conceivable to plausible." *Id*. at 570. The Court also considers that the Supreme Court has cited *Twombly* for the traditional proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardue*, 551 U.S. 89, 93 (2007). Indeed, *Twombly* requires "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some

- 4 -

factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007); *see also Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief).

This Court must take as true all allegations of material fact and construe them in the light most favorable to Spears. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). In general, a complaint is construed favorably to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds*, 457 U.S. 800. Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Furthermore, the Court is not to serve as an advocate of a *pro se* litigant, *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), in attempting to decipher a complaint.

If a court determines that dismissal is appropriate, a plaintiff must be given at least one chance to amend a complaint when a more carefully drafted complaint *might* state a claim. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991). Moreover, when dismissing with leave to amend, a court is to provide reasons for the dismissal so a plaintiff can make an intelligent decision whether to file an amended complaint. *See Bonanno v. Thomas*, 309 F.2d 320 (9th Cir. 1962); *Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987).

III. *Consideration of Materials Outside the Pleadings*

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002). A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings . . . A court may, however, consider certain materials—documents attached to the complaint,

documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir.2003); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity) (overruled on other grounds).

The FAC in this case references and incorporates numerous documents and videos. Spears does not dispute the authenticity of the documents and videos; indeed, he has not objected to this request. The Court finds it may consider those documents and videos in determining the MTD without converting it into a motion for summary judgment.

IV. *Qualified Immunity*

Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects governmental defendants from liability, but is also "'an entitlement not to stand trial or face the other burdens of litigation.' [It] is 'an immunity from suit rather than a mere defense.'" *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Court must determine "whether, in light of clearly established principles governing the conduct in

question, [defendants] objectively could have believed that [their] conduct was lawful." *Watkins v. City of Oakland*, 145 F.3d 1087, 1092 (9th Cir. 1998).

In determining qualified immunity, a court considers "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show [defendants'] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002). If no constitutional right was violated, then there is no need for any further inquiries into qualified immunity. *See e.g., Scott*, 127 S.Ct. at 1774. If the evidence supports a finding that a constitutional rights has been violated, the court then "ask[s] whether the right was clearly established" such that "it would be clear to a reasonable officer that [his] conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-202. Additionally, the United States Supreme Court has determined that the sequence set forth in *Saucier* is not mandatory and that district courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Olivier v. Baca*, 913 F.3d 852, 860 (9th Cir. 2019) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.") (citation omitted).

A plaintiff has the burden of showing the alleged violation of a clearly established federal right. *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *Olivier*, 913 F.3d at 860; *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). The Supreme Court has stated that:

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

- 7 -

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). Further, the Supreme Court has repeatedly stated that courts are not to define clearly established law at a high level of generality; rather, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, ⸺ U.S. ⸺, 136 S.Ct. 305, 308, (2015) (citation omitted, emphasis in original).

## V. *Alleged Violation of First Amendment Right to Free Speech* (*Count I*)

Spears alleges Defendants violated his right to free speech. The First Amendment prohibits government officials from "abridging the freedom of speech . . . or the right to the people peaceably to assemble." U.S. Const. amend. I. "[T]he First Amendment reflects a 'profound national commitment' to the principle that debate on public issues should be uninhibited, robust, and wide-open . . . and [the Supreme Court] ha[s] consistently commented on the central importance of protecting speech on public issues." *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988).

### A. *Forum Analysis*

The first step in analyzing Spears' claim is to determine the nature of the relevant forum. *OSU Student All. v. Ray*, 699 F.3d 1053, 1062 (9th Cir. 2012) (citing *Ariz. Life Coal. Inc. v. Stanton*, 515 F.3d 956, 968 (9th Cir. 2008)). "Forum analysis has traditionally divided government property into three categories: public fora, designated public fora, and nonpublic fora." *Flint v. Dennison*, 488 F.3d 816, 830 (9th Cir. 2007) (internal quotation marks omitted). A traditional public forum is a place "which by long tradition ... ha[s] been devoted to assembly and debate." *Id*. (internal quotation marks omitted). A designated public forum "exists when the government intentionally dedicates its property to expressive conduct." *Id*. (internal quotation marks omitted). A non-public forum is "any public property that is not by tradition or designation a forum for public communication." *Id*. (internal quotation marks omitted). A limited public forum has also been recognized. This is a partially designated

public forum:

> The government is not left with only the two options of maintaining a non-public forum or creating a designated public forum; if the government chooses to open a non-public forum, the First Amendment allows the government to open the non-public forum for limited purposes. The limited public forum is a sub-category of a designated public forum that refers to a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics.

*Id*. at 830–31 (internal quotation marks omitted).

As summarized by the Ninth Circuit:

> In traditional and designated public forums, content-based restrictions on speech are prohibited, unless they satisfy strict scrutiny. *Pleasant Grove* [*City, Utah v. Summum*, 555 U.S. 460, 469–70 (2009)]. In limited public forums, content-based restrictions are permissible, as long as they are reasonable and viewpoint neutral. *See id*. at 470 [].

*Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 496 (9th Cir. 2015).

The parties dispute whether the UA Mall is a traditional public forum. Spears asserts the UA's own policy on the forum characteristics of the property refers to an "open public forum" as well as a "designated public forum." Because open is defined by an online dictionary as "accessible to all; unrestricted as to participants. Free from limitations, boundaries, or restrictions[,] https://www.thefreedictionary.com/open, Spears argues this suggests a traditional rather than a designated public forum: "There can be no question that the public sidewalk Spears was arrested upon is 'by long tradition or by government fiat' been 'devoted to assembly and debate.'" Response (Doc. 31, p. 13).[3] Defendants assert, however, that "a public university's mall, surrounding streets and sidewalks are [not] a traditional public forum[.]" The Supreme Court has stated:

> A university differs in significant respects from public forums such as streets or parks or even municipal theaters. A university's mission is education, and decisions of this

---

[3]While the vacated authority cited by Spears, "*Arkansas E. Television Comm'n v. Forbes* (96-779) 93 F.3d 497," does not provide the quoted remarks included in the Response, the statement of law relied upon by Spears is accurate: "A traditional public forum is government property 'which "by long tradition or by government fiat [has] been devoted to assembly and debate,"' such as public streets and parks." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011) (citations omitted).

- 9 -

Court have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities. We have not held, for example, that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings.

*Widmar v. Vincent*, 454 U.S. 263, 268, n. 5 (1981).

Contrary to Spears' arguments, the UA Mall "is not akin to a public street, park, or theater, but instead is an institute of higher learning that is devoted to its mission of public education. This mission necessarily focuses on the students and other members of the University of Arizona ("UA") community. Accordingly, it has not traditionally been open to the public at large, but instead has been a "special type of enclave" that is devoted to higher education." *Am. Civil Liberties Union v. Mote*, 423 F.3d 438, 444 (4th Cir. 2005) (citing *United States v. Grace*, 461 U.S. 171, 180, (1983)). Spears seems to emphasize that he was on a public sidewalk. However, that sidewalk was within a public university and the UA Mall.

Spears asserts the UA relies on an unwritten policy regarding sound amplification. However, he does refer to the UA Policy and Regulations Governing the Use of the Campus, MTD, Ex. A (Doc. 27-1) in his FAC. *See e.g.* FAC (Doc. 7, p. 26). Spears asserts the applicable UA policy is confusing. The policy defines relevant terms as follows:

7. "Designated Public Forums": The University's campus contains buildings and property whose primary purpose is to provide education, research, and outreach. However, the University often designates areas to allow access by the University Community or to create limited forums for the discussion of certain topics or subject matter by certain speakers, each at times when the property is not being used for its devoted purposes.

8. "Limited Public Forum" is a subcategory of the Designated Public Forum that occurs when the University intentionally opens a Non-Public Forum to speech or to activities related specifically to defined subject matters for certain groups on certain topics.

9. "Mall" refers to the grassy areas between Park Avenue and Campbell Avenue and along University Boulevard East and University Boulevard West that is designated for expressive activities or Limited Public Forums, subject to the qualifications, definitions, and procedures set forth in this policy.

    a. "Reserved Area" refers to those portions of the University campus designated for reservations only which are scheduled to maximize the

- 10 -

availability and use of the space consistent with the University's educational, research, service, and business functions. Use of Reserved Areas is subject to reasonable time, place, and manner restrictions.

b. "Unreserved Area" refers to that part of the Mall which may be used without advance reservations or scheduling for expressive activities, including but not limited to the passing of petitions, distribution of written information, picketing, and carrying of placards. Such use is subject to the time, place, and manner limitations set forth in this policy. For the location of the Unreserved Area, see the available space map at http://union.arizona.edu/mall/maps.php.

10. "Non Public Forums" are University buildings, structures, and property that are not designated as spaces open for public communication, activities, or expression, but instead are reserved for normal business, education, research, or other dedicated purposes.

11. "Official University Activity" means regularly scheduled academic classes, operations, research, business, and other activities, including special events of the University as approved by the University President, Provost, or Senior Vice President for Student Affairs and Enrollment Management.

* * * * *

13. "Open Public Forums" consist of the streets and sidewalks generally open to the public during the times the University is open. Open Public Forums do not include, among other places defined in this policy, the interiors of University Structures or Designated Public Forums.

UA Policy and Regulations Governing the Use of the Campus (3/23/15) ("UA Policy"), § C, MTD, Ex. A (Doc. 27-1). The UA Policy also discusses the use of designated public forums:

1. Designated Public Forums on the campus may be used by the University Community for free expression activities, including passing of petitions, distribution of written information, picketing, and carrying of placards, at times when the University property is not being used for its devoted purpose. Use of Designated Public Forums is subject to time, place, and manner restrictions.

2. Activities within Designated Public Forums shall neither impede pedestrian nor vehicular traffic, ingress to or egress from University Structures, nor disrupt or interfere with Official University Activities or Authorized Activities on University Property. In addition, activities in Designated Public Forums shall not endanger public health, safety, or welfare.

*Id*. at § D. The UA Policy also specifies "the Mall and Designated Public Forum areas may be reserved for use by a Sponsoring Organization/Individual." *Id*. at § L.2.a.

Initially, the Court recognizes that the FAC alleges the "UA and Riester understand there is no law criminalizing Spears' amplified speech—no such law or ordinance exists[,]"

FAC (Doc 7, ¶ 244), and Spears repeatedly argues in his response to the MTD that no such law or ordinance exists. However, Spears has not set forth any authority that an entity must rely on a statute or ordinance to establish a policy or that a such a policy is not enforceable on its own.

The Court does not agree with Spears that the UA Policy is confusing. Rather, the definition of "open public forums" specifically refers to streets and sidewalks that are *generally* open to the public. Yet this provision falls within the overview of the policy which clarifies that the campus grounds and properties are "not places of unrestricted public access." UA Policy at A.1. Moreover, open public forums do not include designated public areas. In other words, only areas that are not designated public areas may even arguably be an open public forum. The UA Policy further specifies that the UA Mall "is designated for expressive activities or Limited Public Forums, subject to the qualifications, definitions, and procedures set forth in this policy." *Id*. at § C.9. The UA Policy clearly evidences an intent to recognize the UA's primary purpose, limit open public forums, and to open non-public forums for limited purposes. The UA Mall is not a traditional public forum and the UA policies and actions indicate the UA designated the UA Mall as a limited public forum. Accordingly, the Court finds the UA Mall was a limited public forum during the Festival of Books.

### B. *Limited Public Forum Restrictions - Festival of Books*

In limited public forums, "a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009); *see also Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 189 (2007) (explaining that restrictions on speech in a non-public forum are permissible if they are "reasonable in light of the purpose served by the forum" and "viewpoint neutral"); *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cty. Sch. Dist. No. 9*, 880 F.3d 1097, 1105 (9th Cir. 2018) (citations omitted) (In a limited public forum, the "restrictions must be (1) 'reasonable' and

(2) 'not an effort to suppress expression merely because public officials oppose the speaker's view.'"). The UA implemented a permit/reservation procedure and followed it in scheduling the Festival of Books. This festival "is a temporary event attracting great numbers of visitors who come to the event for a short period to see and experience the host of exhibits and attractions at the [festival]. The flow of the crowd and demands of safety are more pressing in the context of the [festival]." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 651 (1981). As argued by Defendants:

> "Permit systems are the embodiment of time, place, and manner restrictions that have long enjoyed the approbation of the Supreme Court." *Kroll v. U.S. Capitol Police*, 847 F.2d 899, 903 (D.C. Cir. 1988) (citing [*Heffron*]). The permit system is intended "to avoid conflicts with and disruption of normal educational, business, or other legitimate University purposes." ([UA Policy], p. 9, § (L)(2)).

MTD (Doc. 27, p. 19). The UA Mall was intentionally opened to the scheduled event (the Festival of Books), thereby becoming a limited public forum. Under the UA Policy, the UA Mall and surrounding areas were permitted to be a limited public forum during the Festival of Books. The policy allowed an organization/individuals to reserve space in advance. Under the UA Policy, the UA was allowed to open its property "to speech, or activities related specifically to defined subject matters for certain groups on certain topics." UA Policy at § C.8; *see also Flint*, 488 F.3d at 831.

The parties disagree whether the restriction on amplified speech was content neutral and reasonable in light of the forum's purpose. The Court consider that "it is well established that '[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.'" *Reed v. Town of Gilbert, Ariz.*, — U.S. —, 135 S. Ct. 2218, 2230 (2015) (quoting *Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980). For example, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id.*

On its face, the UA Policy is content neutral. *See Reed*, 135 S. Ct. at 2228 ("A law

- 13 -

that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech."). Although Spears argues that the ban and his arrest were a pretext to silence his message, the allegations contained within the FAC indicate that Salcedo and Riester both informed Spears that sound amplification during the Festival of Books was restricted to the sound stages. The allegations further indicate that Spears' speech itself was not restricted, but the use of sound amplification was prohibited. Although Spears argues that the UA Policy only targets open-air preachers and their unwanted religious message, there is no allegation that religious or biblical speech was restricted from the sound stages (e.g., a participant of the Festival of Books could/may have included religious discussions). The distinction between speech and the amplification of speech indicates Defendants did not adopt a restriction because of a disagreement with the message conveyed. Rather, the restriction was "without reference to the content of the regulated speech." *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). The Ninth Circuit has stated:

> A speech restriction is content-neutral if it is "justified without reference to the content of the regulated speech." *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." [*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)]. The test is whether the government has adopted the restriction "because of disagreement with the message it conveys." *Id.*

*One World One Family Now v. City & Cty. of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996)

This case is similar to *Ward v. Rock Against Racism*. As argued by Defendants, "[i]n *Ward*, New York City's justification for the sound-amplification guideline was its desire to control noise levels at band shell events and to avoid undue intrusion into residential areas and other areas of the park. The Court held that this justification had nothing to do with content and satisfied the requirement that time, place, or manner regulations be content neutral." MTD (Doc. 27, pp. 20-21). The UA Policy states that "amplified sound is restricted to prevent unreasonable interference with or disruption to normal Campus

activities[.]"  MTD, Ex. A, § J(1)(c).  The normal Campus activities included a reserved space – in this case, the Festival of Books.  Spears has alleged he was informed the reservation included the only permission to amplify sound.  He has not alleged any non-permitted individual/entity was allowed to amplify sound.  This restriction was reasonable to control noise levels and avoid undue intrusion into the reserved event.  *See e.g. Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) (speech is subject to reasonable regulation, and "[if] overamplified loudspeakers assault the citizenry, government may turn them down").  Indeed, as pointed out by Defendants, if Spears is correct that any person could constitutionally use amplified speech at this special event, "then that right would extend to everyone—that is, the University could not prohibit anyone who showed up with an amplifier from broadcasting their speech. With this premise, it does not take a great leap of the imagination to see the chaos that could ensue."  MTD Reply (Doc. 34, p. 7).

Spears argues, however, that this case is similar to *Gathright v. City of Portland*, 439 F.3d 573 (9th Cir. 2006).  But the restriction in *Gathright* was in a public park, which is a traditional public forum rather than on university property that has been opened as a limited public forum.  Moreover, Spears speech was not shut down as was Gathright's speech – Spears was merely restricted from amplifying his speech.  *See e.g. Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142, 1168 (9th Cir. 2007) (San Francisco's enforcement of a noise ordinance that prohibited amplified speech and music from being "unreasonably loud, raucous, jarring or disturbing to persons of normal sensitiveness" and companion permit system was permissible); *Costello v. City of Burlington*, 632 F.3d 41 (2d Cir. 2011) ("[T]o secure for [plaintiff] a right to preach at the top of his lungs in a pedestrian mall lined with shops, cafes and dwellings, we would have to impair the rights of all other Burlington residents who shop, work, and dine in the same compact area. Respect for Costello's right to preach does not trump the rights of everyone else.").  While the *Gathright* court determined, for purposes of the appeal, that the government's policy was content neutral, the effect was used to restrict speech based on disruption caused by its content, not its volume

- 15 -

as was the case with Spears.

C. *Qualified Immunity*

Even if Spears had stated a free speech claim upon which relief could be granted, the Court would consider whether Defendants are entitled to qualified immunity. Spears, as the party contesting qualified immunity, has the burden to allege "a law was clearly established at the time of an alleged violation." *Olivier*, 913 F.3d at 860. Spears' "alleged constitutional right would be 'clearly established' if 'controlling authority or a robust consensus of cases of persuasive authority' [that the First Amendment is violated in a case similar to this one]. But no such precedent exists." *Hines v. Youseff*, 914 F.3d 1218, 1229 (9th Cir. 2019) (quoting *Dist. of Columbia v. Wesby*, —— U.S. ——, 138 S.Ct. 577, 589–90 (2018)).

Rather, the case law generally indicates university property is not a traditional public forum. Further, no case law exists clearly establishing a right to Spears to amplify his voice under facts as presented herein. Moreover, a robust consensus of persuasive authority does not exist to establish such a right. Although an officer may "be on notice that their conduct violates established law even in novel factual circumstances, *United States v. Lanier*, 520 U.S. 259, 271 (1997), it is not sufficiently clear that Defendants would have known their conduct in this case violated a constitutional right. Even if Spears had stated a free speech claim upon which relief could be granted, Defendants would be entitled to qualified immunity on this claim. The Court will dismiss this claim.

VI. *Right to Due Process* (*Count II*)

Spears also alleges that Defendants violated his right to due process. The United States Supreme Court has found that, to state a claim for a violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege that a defendant denied plaintiff a specific right protected by the federal constitution without procedures required by the Constitution to ensure fairness (procedural due process), or deliberately abused his power

without any reasonable justification in aid of any government interest or objective and only to oppress in a way that shocks the conscience (substantive due process). *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995); *Daniels v. Williams*, 474 U.S. 327 (1986); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Substantive due process rights are those not otherwise constitutionally protected but which are deeply rooted in this country's history and tradition and "implicit in the concept of ordered liberty" such that "neither liberty or justice would exist if it were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Negligence is not sufficient to state a claim for substantive due process. *See e.g., Daniels v. Williams*, 474 U.S. 327, 333 (1986); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1413 (9th Cir. 1986).

It appears Spears is seeking to allege a procedural due process claim with his allegation the UAPD violated his "right to due process because they arrested and incarcerated Spears without providing him with due notice that he was committing any criminal act." FAC (Doc. 7, ¶ 205). However, the FAC alleges he was given "the customary three warnings" and Theel advised Spears that, if he continued to speak using amplification, he would face arrest if he failed to obey Riester. FAC (Doc. 7, §49).

Spears appears to also be seeking to state both a claim of procedural due process and substantive due process as to his allegation that the UA Policy is vague, lacks sufficient objective standards, and permits arbitrary, discriminatory, and overzealous enforcement. To state a procedural due process claim on the basis of a vague regulation, a plaintiff must first allege a deprivation of a constitutionally protected interest, and second, allege that the deprivation was achieved by means of a constitutionally vague policy or procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Unconstitutional vagueness implicates dual concerns of fair notice of the line between lawful and unlawful conduct, and sufficiently explicit statutory limitations on the discretion of officials to avoid arbitrary and discriminatory enforcement. *Grayned.*

The FAC's own allegations indicate the UA Policy is not vague. Spears alleges:

- 17 -

> The UA lacks an amplified sound permit that Spears or the public could apply for in seeking permission to use amplified sound during the Festival. Only Festival participants are allowed to fill out a permit to amplify sound.

FAC (Doc. 7, ¶ 203).  In other words, it is not that the policy is vague, but that Spears and other non-Festival of Books affiliates, were not permitted to apply for a permit to amplify sound under the policy.  This does not allege the policy is vague, but that Spears objects to the policy limiting permits to those affiliated with the Festival of Books.  Although the FAC conclusorily alleges the UA Policy is vague and lacks "sufficient objective standards to curtail the discretion of UA officials and police officers, FAC (Doc. 7, ¶ 198), the FAC does not allege facts to support these conclusory allegations.  Rather, as Riester explained to Spears, persons not affiliated with the Festival of Books were not allowed to amplify sound within and during the Festival of Books.  The policy and its enforcement is clear and certain.

To any extent Spears is seeking to state a substantive due process claim, the FAC fails to state a claim upon which relief can be granted.  Rather, an alleged infringement of the right to free speech does not provide the basis for a due process violation.  The Supreme Court has determined that, "where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., for plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001).  As the First Amendment provides for free speech protection, Spears may not additionally base a due process claim on a violation of his right to free speech.

In addition to his general allegations regarding a due process violation, Spears also alleges that neither the State nor the UAPD can cite any law, ordinance or Arizona Board of Regents policy infraction Spears was violating by amplifying his speech.  However, Spears has failed to cite to any authority that a UA policy cannot adequately state a policy – i.e., that a policy has to be more formally enacted.  Indeed, Spears has cited to the UA policy in his

1   FAC.  Moreover, the policy was repeatedly explained to Spears.

2       The Court finds Spears has failed to state a due process claim upon which relief could

3   be granted against Defendants.  Even if Spears had adequately stated a claim, Defendants are

4   entitled to qualified immunity on this claim.  UA provided a written policy that, on its face,

5   does not discriminate against any class or content.  Spears was advised of the policy and how

6   it restricted Spears' ability to use amplification during the Festival of Books.  The Court will

7   dismiss this claim for failure to adequately stating a claim.

8

9   VII.  *Equal Protection Clause* (*Count III*)

10      Spears also alleges the UA Policy restricting amplified speech violated his right to

11  equal protection. "The Equal Protection Clause . . . is essentially a direction that all persons

12  similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center, Inc.*,

13  473 U.S. 432, 439 (1985).  "'To state a claim . . . for a violation of the Equal Protection

14  Clause . . . a plaintiff must show that the defendants acted with an intent or purpose to

15  discriminate against the plaintiff based upon membership in a protected class.'"  *Lee v. City*

16  *of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d

17  1193, 1194 (9th Cir. 1998)); *Rosenbaum v. City & Cty. of San Francisco*, 484 F.3d 1142,

18  1153 (9th Cir. 2007) ("To show discriminatory purpose, a plaintiff must establish that 'the

19  decision-maker . . . selected or reaffirmed a particular course of action at least in part

20  "because of," not merely "in spite of," its adverse effects upon an identifiable group.'")

21  (citations omitted).

22      Here, the FAC does not allege a membership in a protected class or that Defendants

23  acted in a course of action because of its effect upon an identifiable group.  Moreover, the

24  Supreme Court has held:

25      "[A] government entity may create a forum that is limited to use by certain groups or
        dedicated solely to the discussion of certain subjects."  [*Perry Educ. Ass'n v. Perry*
26      *Local Educators' Ass'n*, 460 U.S. 37, 46 n. 7 (1983)].  In such a forum, a government
        entity may impose restrictions on speech that are reasonable and viewpoint neutral.
27      *See Good News Club v. Milford Central School*, [533 U.S. 98, 106–107] (2001).

28                                  - 19 -

*Summum*, 555 U.S. at 470. In this case, the UA created a forum for the Festival of Books. Spears has not alleged that he was part of the Festival of Books organization. In other words, he was not similarly situated with Festival of Books participants who obtained permission to amplify speech. Moreover, Spears has not alleged that other individuals who were not Festival of Books participants, i.e., others with whom Spears was similarly situated, obtained permission to amplify speech. The Ninth Circuit has stated:

> As for permit issuance, the district court correctly held that a proper control group would have been smaller groups that applied for permits for sound amplification at similar times and locations. By contrast, appellants' undifferentiated control group of permitted and non-permitted groups, large and small, using amplified sound was not comparable because these groups were not similarly situated because of their varying characteristics. Because appellants did not identify a bona fide control group, they cannot demonstrate a discriminatory effect in the City's issuance of permits for amplified sound.

*Rosenbaum v. City & Cty. of San Francisco*, 484 F.3d 1142, 1154 (9th Cir. 2007). Spears similarly appears to be arguing that any persons (i.e., persons within an undifferentiated group of permitted and non-permitted groups seeking to use amplified sound), including Spears, who were not allowed to amplify sound, were similarly situated. However, the FAC does not include any allegations establishing such persons are similarly situated as opposed to being a group of varying characteristics. The Court finds Spears has not stated an equal protection claim upon which relief can be granted.

Additionally, Defendants are entitled to qualified immunity on this claim. The UA Policy, on its face, does not discriminate against any class or content. Spears was advised of the policy and how it restricted Spears' ability to use amplification during the Festival of Books. The Court will dismiss this claim for failure to adequately state a claim.

VIII. *Fourth Amendment Claim* (*Count VII*)

Spears alleges his arrest was in violation of the Fourth Amendment. Under the Fourth Amendment, to arrest a suspect on probable cause, the facts and circumstances within the officer's knowledge must be sufficient to warrant a prudent person, or one of reasonable

caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). In considering alleged violations of the Fourth Amendment, a court undertakes an objective assessment of an officer's actions in light of the facts and circumstances then known to the officer. *Scott v. United States*, 436 U.S. 128, 137, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

Police may arrest a person without a warrant if the arrest is supported by probable cause. *See United States v. Hoyos*, 892 F.2d 1387 (9th Cir.1989). Indeed, probable cause to arrest is a complete defense to the liability of a police officer for an action under § 1983 arising out of an arrest. *Owen v. City of Independence*, 445 U.S. 622, 637 (1980); *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir.1990). An officer has probable cause to arrest when the officer has knowledge of facts and circumstances sufficient to cause a reasonable person to believe an offense has been committed. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Henry v. United States*, 361 U.S. 98, 102 (1959); *Brinegar v. United States*, 338 U.S. 160, 175 (1949). In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest. *United States v. Mota*, 982 F.2d 1384, 1388 (9th Cir.1993); *see also Barry v. Fowler*, 902 F.2d 770, 771 (9th Cir.1990) (finding that arrest without probable cause that the arrestee committed a crime constitutes a violation of the Fourth Amendment). "[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 176 (2008).

Under Arizona law, an officer is allowed to make a warrantless arrest when a misdemeanor is committed in the officer's presence. A.R.S. § 13-3883(A)(2). The UA police officers in this case had probable cause to arrest Spears. As alleged in the FAC, Spears remained on the property after he was reasonably directed to leave because he was

not complying with the UA Policy. *See* A.R.S. § 13-502(A)(1) ("[k]nowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law enforcement officer, the owner or any other person having lawful control over such property"). Further, as alleged in the FAC, Riester advised Spears he was being disruptive. *See* A.R.S. § 13-2911(A)(2) (interference with or disruption of an educational institution).

As probable cause existed to arrest Spears for criminal trespass, the Court finds Spears has failed to state a claim upon which relief may be granted. Further, even if Spears had adequately stated a claim, Defendants are entitled to qualified immunity on this claim. The FAC makes clear that officers observed Spears committing a misdemeanor in their presence, knew that Spears had been advised of the UA Policy, and knew that Spears had been advised he would be arrested if he did not comply with the orders of Riester (who was acting pursuant to the UA Policy). Defendants could have objectively believed that their conduct was lawful. *Watkins*, 145 F.3d at 1092. The Court will dismiss this claim.

IX. *State Law Claims*

Defendants argue that, because Spears' state law claims flow from the alleged First and Fourth Amendment violations, they are not viable on their own. Defendants fail to cite to any authority supporting this position. While a finding of probable cause may result in some state law claims to fail as a matter of law, *see e.g. Hansen v. Garcia*, 713 P.2d 1263, 1265, 1265-66 (Ariz.App.1985) (holding that because probable cause existed to arrest the plaintiff, summary judgment was appropriate on plaintiff's malicious prosecution, false arrest, false imprisonment, gross negligence, negligence, and civil rights claims), Defendants have failed to cite to any authority that the state law claims in this case are necessarily contingent upon a civil rights violation. Indeed, although civil liability cannot be imposed on a law enforcement officer for "engaging in [justified] conduct," regardless of the theory of recovery, A.R.S. § 13-413, it appears such justification may be an issue for a trier of fact, *see e.g. Ryan v. Napier*, 425 P.3d 230, 239 (Ariz. 2018). The Court declines to dismiss the state

law claims on this basis alone.

A. *Notice of Claim*

Defendants assert Spears failed to serve individual defendants with Notices of Claims as required by A.R.S. § 12-821.01. The statute provides:

> Persons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. § 12-821.01.A. Spears asserts he has complied with the statute in that he served a Notice of Claim on the Arizona Board of Regents. Spears does not assert he served the individually named Defendants.

The Court of Appeals of Arizona has stated:

> When a person asserts claims against a public entity and public employee, the person "must give notice of the claim to *both* the employee individually and to his employer." *Crum v. Superior Court*, 186 Ariz. 351, 352, 922 P.2d 316, 317 (App.1996). The purpose of the statute is to allow the entity and employee the opportunity to "investigate and assess their liability, to permit the possibility of settlement prior to litigation and to assist the public entity in financial planning and budgeting." *Id.* "Compliance with the notice provision of § 12–821.01(A) is a 'mandatory' and 'essential' prerequisite to such an action . . ." *Salerno v. Espinoza*, 210 Ariz. 586, ¶ 7, 115 P.3d 626, 628 (App.2005). Failure to comply with the statute is not cured by actual notice or substantial compliance. *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, ¶ 10, 144 P.3d 1254, 1256 (2006).

*Harris v. Cochise Health Sys.*, 215 Ariz. 344, 351, 160 P.3d 223, 230 (Ct. App. 2007). The statute "requires that those persons asserting claims against pubic entities or public employees do so by *actually delivering* or ensuring that the actual delivery of the notice of claim to the appropriate person within the statutory period." *Lee v. State*, 161 P.3d 583, 587 (Ariz.App. 2007) (emphasis in original) (vacated on other grounds). Although Spears seeks to distinguish *Harris* based on the content included within the Notice of Claim, Spears does not address the requirement that each individual be served.

- 23 -

The Court finds Spears did not deliver or ensure delivery of the Notice of Claim to the individual Defendants. Accordingly, the state law claims against the individual Defendants are barred and must be dismissed.

B. *Intentional Infliction of Emotional Distress* (*Count IV*)

"A plaintiff suing for intentional infliction of emotional distress must prove the defendant caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result." *Watkins v. Arpaio*, 367 P.3d 72, 74–75 (Ariz. Ct. App. 2016); *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 517, 115 P.3d 107, 111 (2005); *Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12 (Ariz. 2002) (discussing difference between negligent and intentional torts). "The trial court determines whether the alleged acts are sufficiently extreme and outrageous to state a claim for relief." *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 495 (Ariz. Ct. App. 1995); Restatement (Second) of Torts § 46, comment h.

Defendants assert the facts alleged in the FAC (and in the incorporated videos) do not rise to the shocking and offensive level to state a claim for intentional infliction of emotional distress. Spears does not respond to this argument. Here, a policy regarding the use of the UA Mall, including sound amplification, was established and followed. The individual Defendants were following that policy and enforcing state laws in directing Spears to cease the amplification and subsequently arresting him. The Court finds, under the facts as alleged in the FAC, a claim for intentional infliction of emotional distress has not been adequately stated and will be dismissed.

C. *Abuse of Process* (*Count V*)

"The essential elements of an abuse of process claim are (1) 'an ulterior purpose' and

(2) 'a willful act in the use of judicial process not in the regular conduct of the proceeding.'" *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1252 (9th Cir. 1987) (quoting *Rondelli v. County of Pima*, 586 P.2d 1295, 1301 (Ariz.App. 1978). An abuse of process claim "requires some act beyond the initiation of a lawsuit[.]" *Joseph v. Markovitz*, 551 P.2d 571, 575 (Ariz.App. 1976). Indeed, process refers to the use of "procedures incident to the litigation process." *Nienstedt v. Wetzel*, 651 P.2dd 876, 880 (Ariz.App. 1982); *see e.g., Twyford v. Twyford*, 63 Cal.App.3d 916, 134 Cal.Rptr. 145 (1976) (request for admissions); *Hopper v. Drysdale*, 524 F.Supp. 1039 (D.Mont. 1981) (noticing of depositions).

Defendants assert Spears' claim fails because he does not allege the essential elements of a willful act in the use of judicial process and for an ulterior purpose not proper in the regular conduct of the proceedings. The FAC alleges the UA, acting through Riester, has engaged in a campaign to hinder the amplified religious speech of Spears on campus and that his arrest is one such example.

However, Spears has not alleged an act of abuse beyond the initiation of the criminal complaint against Spears. An "'[a]buse of process . . . is not commencing an action or causing process to issue without justification,' *Prosser & Keeton on Torts* § 121 at 897 (5th ed. 1984), but requires an overt act other than the initiation of a lawsuit to effect the illegitimate end." *In re American Continental Corporation/Lincoln Sav. & Loan Securities Litigation*, 845 F.Supp. 1377, 1385 (D.Ariz. 1993), *citing Markovitz*. "It is immaterial that the process may have been properly obtained or issued as a normal incident of the litigation involved. It is the *subsequent misuse* which constitutes the misconduct for which liability is imposed." *Nienstedt v. Wetzel*, 133 Ariz. at 354, *emphasis added*. In fact, "there is no liability when the defendant has done nothing more than legitimately utilize the process for its authorized purposes, even though with bad intentions." *Id.* Indeed, the UA police officers in this case had probable cause to arrest Spears for a misdemeanor committed in their presence, irrespective of the conduct of Riester. The Court finds Spears has failed to state a claim for abuse of process upon which relief may be granted. The Court will dismiss this

claim.

### D. *False Light (Invasion of Privacy)* (*Count VI*)

To state a claim for false light invasion of privacy, a plaintiff must alleged "(1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz.App. 2015) (citing *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 786 (1989). The Arizona Court of Appeals has stated:

> Although a cause of action for false light invasion of privacy may arise when someone publishes something untrue about a person, in some instances, even a true statement may form the basis for false light liability if it creates a false implication about the person. See [*Godbehere*, 783 P.2d at 787] ("[T]he false innuendo created by the highly offensive presentation of a true fact constitutes the injury." (citing Restatement § 652E)).

*Desert Palm Surgical Grp.*, 343 P.3d at 450.  Spears has not responded to this argument.

The FAC alleges, in essence, that Defendants' conduct intended to misrepresent Spears' character, history, activities and beliefs; the conduct in having Spears arrested created a false implication about Spears.  However, a policy regarding the use of the UA Mall, including sound amplification, was established and followed.  The individual Defendants were following that policy and enforcing state laws in directing Spears to cease the amplification and subsequently arresting him.  The Court finds, under the facts as alleged in the FAC, a claim for false light invasion of privacy has not been adequately stated.  Dismissal of this claim is appropriate.

### E. *False Arrest/False Imprisonment* (*Count VIII*)

As summarized by another court:

Under Arizona law, the intentional torts of false arrest and false imprisonment differ only in terminology and are defined as "the detention of a person without his consent

and without lawful authority." *Slade v. City of Phoenix*, [541 P.2d 550, 552 (Ariz.1975)] (citation omitted); *see also Al–Asadi v.. City of Phoenix*, 2010 WL 3419728, at *3 (D.Ariz. Aug. 27, 2010). "The essential element necessary to constitute either false arrest or false imprisonment is unlawful detention." *Id.*, [541 P.2d at 552]. "Further, false arrest or imprisonment does not require physical detention—the tort may be committed by intimidation." *Gortarez v. Smitty's Super Valu, Inc.*, [680 P.2d 807, 811 n. 2 (Ariz.1984)] (citing W. Prosser, *Law of Torts* § 11, at 42–43 (4th ed.1971) (finding trial court erred in directing a verdict for defendants on false arrest and imprisonment counts alleged against a shopkeeper brought by a customer suspected of shoplifting as issues whether the detention was carried out in a reasonable manner and for a reasonable length of time were for the jury).

*Martinez v. City of Avondale*, No. CV-12-1837-PHX-LOA, 2014 WL 178144, at *7 (D. Ariz. Jan. 16, 2014).

As the Court has previously found probable cause existed to arrest Spears, the Court finds Spears has failed to state a claim for false arrest upon which relief may be granted and will dismiss this claim.

X. *Claims Against the State or State Agencies*

The ABOR has been named as a defendant in this case. The applicable statute provides the ABOR is a public corporate body that governs the state universities in Arizona and is authorized to sue and be sued in its own name. A.R.S. § 15-1625(B)(3). However, states and state agencies are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 70 (1989); *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (only individual state officials or employees, sued in their personal capacity, qualify as "persons" within the meaning of §1983); *Harris v. Arizona Bd. of Regents*, 528 F. Supp. 987, 995 (D. Ariz. 1981).

Rather, compensatory damages against state defendants are not allowed because the Eleventh Amendment "bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dept of Public Safety*, 488 F. 3d 1144, 1147 (9th Cir. 2007) ). It also provides immunity for state officials sued in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S.

- 27 -

at 71 (citation omitted). "As such, it is no different from a suit against the State itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Any constitutional claims for damages against the ABOR, therefore, must be dismissed. Such claims will be dismissed without leave to amend. To any extent the FAC states a claim for prospective injunctive relief, however, dismissal on this basis is not appropriate.[4] *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007);

XI. *Official Capacities of Defendants*

Defendants argue that claims against state actors in their official capacities must be dismissed. Indeed, the Eleventh Amendment bars a section 1983 damages claim against state actors sued in their official capacities. *Will*, 491 U.S. at 66. In *Will*, the Supreme Court held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . As such, it is no different from a suit against the state itself." *Will*, 491 U.S. at 66. The Ninth Circuit has "held that a state university is an arm of the state entitled to Eleventh Amendment immunity." *Flint*, 488 F.3d at 825. To the extent Spears is seeking to sue state officials in official capacities for damages, the claims will be dismissed without leave to amend. However, to the extent Spears seeks to sue state official in official capacities for injunctive relief to prevent an ongoing violation of federal law, dismissal on this basis is not appropriate.[5] *Id.* ("When sued for prospective injunctive relief, a state official in his official capacity is considered a "person" for § 1983 purposes.").

_____

[4]Dismissal is appropriate, however, for failing to allege sufficient facts to state a claim upon which relief may be granted.

[5]Dismissal is appropriate, however, for failing to allege sufficient facts to state a claim upon which relief may be granted.

XII. *Supervisory Liability*

Defendants argue that neither the ABOR nor Seastone, the Chief of the UA police department, are liable under the doctrine of *respondeat superior* for the actions of the other individual defendants within the scope of their employment.

A government entity "cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018. The local government "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the *respondeat superior* theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–480 (1986). The Court finds Spears has failed to state a claim for *respondeat superior* liability against ABOR.

To state a civil rights claim against a government entity[6], Plaintiffs must allege the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691–694; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir.2002). Additionally, a government entity "may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir.2001), *quoting Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir.2007). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it

---

[6]"Governmental entities have no inherent power and possess only those powers and duties delegated to them by their enabling statutes. Thus, a governmental entity may be sued only if the legislature has so provided." *Braillard v. Maricopa County*,232 P.3d 1263, 1269 (Ariz.App. 2010) (citations omitted).

must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1995), cert. denied, 520 U.S. 1117, 117 S.Ct. 1249 (1997).

Here, Spears implicitly alleges the ABOR and Seastone, by implementing and enforcing the UA Policy regarding amplified sound (including the policy regarding special events), violated Spears' rights to free speech and due process. As previously discussed, a claim for prospective injunctive relief may be brought against the ABOR and Seastone in his official capacity. Spears alleges the UA Policy and its resulting constitutional violations are not predicated on isolated or sporadic incidents, but has been ongoing since at least 2012 and has become the UA's traditional method of carrying out the policy. However, the allegations do not state a free speech or due process violation as discussed herein. The Court finds Spears has not stated a claim against the ABOR or for Seastone for which relief may be granted. Any claim for prospective injunctive relief against the ABOR and Seastone will be dismissed.

Further, as to Seastone, the Court recognizes that Congress did not intend to "impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692. Supervisory personnel are not generally liable under section 1983 for actions of their employees under a *respondeat superior* theory; therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir.2001); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979).

To state a claim for supervisor liability, a plaintiff must allege facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v.*

*Black*, 885 F.2d 642, 646 (9th Cir.1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) (supervisory liability in an individual capacity requires:  (1) that defendant's "own culpable action or inaction in the training, supervision, or control of his subordinates" caused the constitutional injury, (2) that the defendant "acquiesce[d] in the constitutional deprivations of which [the] complaint is made," or (3) that his conduct showed a "reckless or callous indifference to the rights of others").

Here, the FAC does not allege Seastone personally participated in the alleged deprivation.  Further, as discussed herein, the alleged facts and UA Policy do not state a constitutional violation, so the FAC fails to allege Seastone knew of violations and failed to act to prevent them.  Lastly, the FAC does not allege Seastone implemented a policy that repudiated constitutional rights.  The Court finds the FAC fails to allege a claim against Seastone for which relief may be granted.  The claims against Seastone will be dismissed.

XIII. *Punitive Damages*

Defendants argue that "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages."  A.R.S. § 12-820.04.  Therefore, Defendants assert Spears' prayer for punitive damages against the State Defendants on his state law claims must be stricken.  Spears asserts, however, that the FAC alleges sufficient tortious, outrageous and reckless conduct to warrant exemplary and punitive damages.  *Smith v. Wade*, 461 US 30 (1983).  *Smith*, however, was addressing § 1983 claims, while Defendants are seeking to preclude Spears' prayer for punitive damages on the state law claims.

Although "punitive damages arising under state law claims are not recoverable against public employees acting within the scope of their public responsibilities[,]" *Sweet v. City of Mesa*, No. CV-17-00152-PHX-GMS, 2018 WL 2464111, at *2 (D. Ariz. June 1, 2018), punitive damages are allowed under § 1983 "when a defendant's conduct was driven by evil

motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993)); *Binkovich v. Barthelemy*, 672 F. Appx 648, 650 (9th Cir. 2016).    Spears' request for punitive damages on his state law claims will be stricken.

XIV.  *Motion for Preliminary Injunction*

        Injunctive relief is an equitable remedy.  "The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803 (1982).  Injunctive relief is not automatic:  "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. Although particular regard should be given to the public interest . . . a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 107 S.Ct. 1396, 1402 (1987).  The standard for issuing a TRO is the same as that for issuing a preliminary injunction.  *See Brown Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc.*, 236 F.Supp.2d 1152, 1154 (D.Haw. 2007).

        To obtain injunctive relief, a plaintiff must show either "(a) probable success on the merits combined with the possibility of irreparable injury or (b) that [it] has raised serious questions going to the merits, and that the balance of hardships tips sharply in [its] favor." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir.2003).  The Ninth Circuit has explained that "these two alternatives represent 'extremes of a single continuum,' rather than two separate tests.  Thus, the greater the relative hardship to the moving party, the less probability of success must be shown." *Immigrant Assistant Project of Los Angeles County Fed'n of Labor (AFLCIO) v. INS*, 306 F.3d 842, 873 (9th Cir. 2002) (citation omitted). Because a preliminary injunction is an extraordinary remedy, the moving party must carry

its burden of persuasion by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 117 S.Ct. 1865 (1997); *City of Angoon v. Marsh*, 749 F.2d 1413 (9th Cir. 1984). Therefore, Spears must prove with a clear showing that there is either a probable success on the merits combined with the possibility of irreparable injury or that he has raised serious questions going to the merits and that the balance of hardships tips sharply in his favor.

However, the Court has found it appropriate to dismiss the claims in the FAC. In other words, there can be no probable success on the merits because Spears, at this time, has failed to state a claim against any Defendant(s). *See e.g., Stewart v. United States I.N.S.*, 762 F.2d 193, 199 (2nd Cir. 1985) (no jurisdictional basis for preliminary injunctive relief where no complaint was filed; although the "filing of a complaint will not necessarily satisfy other jurisdictional requirements, it is certainly a necessary condition"); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (party moving for preliminary injunctive relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); *see also* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). The request for injunctive relief will be denied.

XV. *Leave to Amend*

Within 30 days, Spears may submit a second amended complaint to cure the deficiencies outlined above.

Spears must clearly designate on the face of the document that it is the "Second Amended Complaint." The second amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original complaint or FAC by reference. Spears may include only one claim per count.

A second amended complaint supersedes the original complaint and a first amended complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat an original complaint (and previous amended complaints) as nonexistent. *Ferdik*,

963 F.2d at 1262. Any cause of action that was raised in the original complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a first amended complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

XVI.  *Warnings*

A.  If Spears' address changes, Spears must file and serve a notice of a change of address in accordance with LRCiv 83.3(d). Spears must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

B.  All parties must submit a paper courtesy copy of filings for use by the Court in conformance with the ECF Policies and Procedures Manual § II.D.3; *see also* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice.

C.  If Spears fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).


Accordingly, IT IS ORDERED:

1.      The Motion to Dismiss (Doc. 27) is GRANTED.

2.      The claims for a violation of free speech (Count I), a violation of due process (Count II), a violation of equal protection (Count III), intentional infliction of emotional distress (Count IV), abuse of process (Count V), false light invasion of privacy (Count VI), arrest without probable cause (Count VII), and false arrest/false imprisonment (Count VIII) are DISMISSED WITH LEAVE TO AMEND.

3.      State law claims against individual Defendants are DISMISSED WITHOUT LEAVE TO AMEND for failure to comply with the Notice of Claim statute.

4.      Claims for non-prospective injunctive relief against the Arizona Board of

Regents and Seastone in his official capacity are DISMISSED WITHOUT LEAVE TO AMEND.

5.      Claims against individual defendants in their official capacities for damages are DISMISSED WITHOUT LEAVE TO AMEND.

6.      The First Amended Complaint is DISMISSED for the reasons discussed herein. Spears has 30 days from the date of this Order is filed to file a second amended complaint in compliance with this Order. If Spears fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action.

7.      The Motion for Preliminary Injunction (Doc. 35) is DENIED.

DATED this 6th day of March, 2019.


_____
Cindy K. Jorgenson
United States District Judge