**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roy E. Spears, ) | |
| ) | |
| Plaintiff, ) | No. CIV 18-126-TUC-CKJ |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Arizona Board of Regents, et al., ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is the Motion to Dismiss ("MTD") (Doc. 48) filed by State Defendants seeking to dismiss the Second Amended Complaint (Doc. 44) filed by Plaintiff Roy E. Spears ("Spears"). The parties have thoroughly presented the facts and briefed the legal issues. Therefore, the Court declines to set this matter for oral argument. See LRCiv 7.2(f); 27A Fed.Proc., L. Ed. § 62:367 (March 2016) ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion.").

I. *Factual and Procedural Background*[1]

Spears attended the 2017 Festival ("Festival") on the University of Arizona ("UA") campus mall ("UA Mall") on March 17, 2017. ¶ 15. He was soon immersed by the amplified sound of the festival. ¶ 45. Spears put on his GoPro, amplification system, headset microphone, placed Gospel signs around a tree, held one Gospel sign, and began to speak at approximately 12:20 p.m. ¶ 46. Within several minutes, Rebekah Salcedo ("Salcedo"), a UA

---

[1]Unless otherwise stated, the facts are taken from Spears' Second Amended Complaint, (Doc. 44).

"First Amendment Monitor," approached and asked Spears to turn off his microphone explaining that amplification can only be used on the sound stages and with a permit. ¶ 47. She clarified that, under the Festival's policy, he could stay and speak as long as he did not use amplification. *Id.* Spears disagreed with the policy claiming that it was arbitrary. ¶ 48. Salcedo replied that it was not arbitrary because the Festival had reserved the stages and sound licenses for the weekend through UA. ¶¶ 49-50.

Dean of Students Kathy Adams Riester ("Riester") arrived several minutes later. ¶ 51. Riester told Spears his amplifying sound was disruptive to the Festival of Books and that volunteers from the Festival had complained. ¶ 52. University of Arizona Police Department ("UAPD") Officer Ian Theel ("Theel") arrived and advised Spears that, if he continued to speak using amplification, he would face arrest if he failed to obey Riester. ¶ 55. After Spears continued to speak using amplification, he was arrested. ¶ 55.

On March 8, 2018, Spears filed a civil rights Complaint (Doc. 1) with this Court. On May 29, 2018, Spears filed his First Amended Complaint. (Doc. 7). On July 5, 2018, Defendants filed a Motion to Dismiss (Doc. 27). The Motion to Dismiss was granted with leave to amend. (Doc. 41). Spears has filed his Second Amended Complaint ("SAC"). (Doc. 44). State Defendants filed a MTD the SAC asserting Spears has not stated a claim. (Doc. 48). Spears has responded (Doc. 49) and Defendants have replied (Doc. 50).

Spears argues that he has stated a claim because:

(1)     The Festival was a traditional public forum.

(2)     Defendants' restriction was unreasonable because he was not disrupting the festival.

(3)     Therefore, Defendants restricted his constitutionally protected speech in an unconstitutional way.

Defendants argue that Spears has failed to state a claim as he does not allege any illegal conduct because:

(1)     The Festival was a limited public forum so the scrutiny for restriction is lower.

- 2 -

(2)     However, even if the scrutiny for restriction was higher, the time, place, and manner restriction is still constitutional.

(3)     Therefore, Spears claim must be dismissed because his speech was restricted in a constitutional manner making his claim implausible.

This Court finds Defendants' arguments persuasive and will grant their MTD for the reasons stated below.

II.     *Analysis*

With the exception of the A.R.S. § 15-1861, the Court extensively discussed the issues presented in the original Motion to Dismiss, response, and reply in its March 7, 2019, Order (Doc. 41).  As a number of these issues are duplicative, the Court will not repeat those discussions in depth.

III.     *Plausibility Requirement*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a). The United States Supreme Court has found that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court considers the SAC in light of *Twombly* and must determine if Spears has "nudge[d] [the] claims across the line from conceivable to plausible." *Id.* at 570. This Court must take as true all allegations of material fact and construe them in the light most favorable to Spears. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir.  2003).  In general, a complaint is construed favorably to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, 457 U.S. 800.  Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

IV.    *Materials Outside of Pleadings*

When deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings . . . A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity) (overruled on other grounds).

The SAC references and incorporates several documents and links outside of his pleading. Spears does not dispute their authenticity. The Court finds it may consider those documents and videos in determining the MTD without converting it into a motion for summary judgment.

V.    *A.R.S. § 15-1861*

The parties disagree as to the effect of A.R.S. § 15-1861 on the plausibility of Spears' claims.  Defendants assert the A.R.S. § 15-1861 in effect at the time of the incident is not applicable because Spears was not a UA student.  In responding to this argument, Spears purports to cite to the A.R.S. § 15-1861 that was enacted in 2018; however, he is actually referring to the A.R.S. § 15-1864 that was enacted in 2018.  However, the version in effect in 2017 at the time of the incident did not include the language relied upon by Spears.  *See* A.R.S. § 15-1864 (eff. 8/6/2016).

Moreover, since the original enactment of A.R.S. § 15-1861, which became effective on July 20, 2011, the only significant modification of the statute has been to include a

designated public forum within the definition of public forum:

> 2. "Public forum" includes any open, outdoor area on the campus of a university or community college and any facilities, buildings or parts of buildings that the university or community college has opened to students or student organizations for expression.

A.R.S. § 15-1861 (eff. 7/20/2011).

> 2. "Public forum" includes both a traditional public forum, which is any open, outdoor area on the campus of a university or community college, and a designated public forum, which is any facility, building or part of a building that the university or community college has opened to students or student organizations for expression.

A.R.S. § 15-1861 (eff. 8/6/2016).[2]   Although the 2016 version included the phrase "traditional public forum," the definition itself (i.e., open, outdoor area . . .) was not modified.

A review of the legislative history of the 2016 version of the statute indicates the Arizona Legislature contemplated language that permitted a university or community college to restrict a student's speech in a public forum only if it demonstrated the burden to the student was both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest, but rejected that language. *See* Arizona House Amendment, 2016 Reg. Sess. H.B. 2615 (Mar. 22, 2016); *see also Kaahumanu v. Hawaii*, 682 F.3d 789, 799 (9th Cir. 2012) ("The government can exclude a speaker from a traditional public forum 'only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.'") (citation omitted).   Rather, without the inclusion of the language requiring a compelling government interest with the least restrictive means furthering that interest, it does not appear the Arizona Legislature sought to redefine the nature of university property.   As the version adopted does not mandate a traditional public forum analysis, the legislative history of the version of the statute in effect when the incident occurred does not indicate any intention to

---

[2]The version of this subsection which became effective on August 3, 2018, modified the subsection only to renumber it as (3).

override First Amendment law. The Court finds A.R.S. § 15-1861 does not affect the First Amendment analysis of Spears' claims.

VI.     *First Amendment – Forum Analysis*

    A.     *Limited Public Forum*

Determining the type of forum is a matter of law. *See Heffron v. International Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 650-51 (1981); *OSU Student All. v. Ray*, 699 F.3d 1053, 1062 (9th Cir. 2012). A limited public forum is a type of designated public forum where the government opens a non-public forum but limits it to certain groups of categories of speech. *Flint v. Dennison*, 488 F.3d 816, 832 (9th Cir. 2007). For example, in *Flint*, the Court concluded that a student election was a limited public forum because the election had certain regulations on who could become a candidate, like a minimum GPA, and on who could vote, like minimum credit hours. *Id.* Moreover, there were regulations on how a candidate could campaign:  e.g. (1) only during a certain time, (2) no door-to-door campaigning, and (3) no campaigning in class or a residence hall without permission from the professor or hall office, respectively. *Id.*

By contrast, a traditional public forum is a "place[] which by long tradition ... [has] been devoted to assembly and debate." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). For example, in *Gathright v. City of Portland*, the court found that a public park was a traditional public forum because parks and street corners are traditionally where street preachers go to express themselves. 439 F.3d 573, 576 (9th Cir. 2006). Similar to the election in *Flint* that regulated categories of people and speech, the Festival  and UA have regulations that only permit certain organizations or people to speak with amplification during the event. (Doc. 48 Ex. A-C). Spears argues that based on the Festival and UA's own policies (included in Doc. 48 Ex. A-C and at http://tucsconfestivalofbooks.org/?id=242) that the Mall is a traditional public forum because it traditionally is open to the public and all kinds of speech similar to *Gathright*. (Doc. 44  30-38).

Although the Mall is akin to a park and traditionally open to the public, the Supreme Court has "never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities… [or required] a campus [to] make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings." *Widmar v. Vincent*, 454 U.S. 263, 268, n. 5 (1981). In this case, UA created a limited public forum by hosting an event with specific regulations on the manner of speech, namely amplification.

B.     *Traditional Public Forum*

However, even if the UA Mall during the Festival was a traditional public forum, the restriction would pass the higher scrutiny required for speech restrictions and would therefore pass the lower scrutiny of a limited public forum.  In a traditional public forum, the government can impose reasonable time, place, and manner restrictions on speech if they are (1) content neutral, (2) narrowly tailored to serve a significant government interest, and (3) permit ample alternatives.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Parts (1) and (3) are not at issue in this case because (a) the restriction was only on whether he could use amplification, it was indifferent to the content of his speech, and (b) Spears was offered ample alternatives:  (i) move outside of the festival or (ii) continuing speaking without the microphone. (Doc. 44 ¶ 70) (It appears that Spears was most effective speaking without his amplification because he was able to sustain a conversation without it for at least five minutes before the incident. Doc. 44 ¶ 66).

Focusing on part (2), the restriction must be narrowly tailored to serve a significant government interest.  This requirement is satisfied if the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).  The restriction does not have to be the least restrictive means.  *Id*. at 798.  Controlling noise levels and avoiding undue intrusion into a reserved event is reasonable.  *See e.g. Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) (speech is subject to reasonable regulation, and "[if] overamplified loudspeakers assault the

citizenry, government may turn them down"). For example, in *Ward*, the court held that a restriction requiring performers to use the city's amplification equipment satisfied this requirement because the city had a substantial interest in ensuring its citizens' enjoyment of whatever benefits the park offered, like high quality amplified music. *Ward*, 491 U.S. at 797.

Like in *Ward*, UA is seeking to ensure a high-quality event narrowly tailored to their interests. The Festival is a registered non-profit seeking to fund literacy advancement in southern Arizona. (Doc. 48, pg. 6). Advancing literacy is certainly a substantial interest of a school like the enjoyment of a city park for a city. Moreover, the restriction on amplification was to ensure that everyone in attendance could enjoy the event and prevent unreasonable interferences with scheduled uses of University property, namely the Festival, similar to the city seeking to ensure the enjoyment of band shell concert attendees. For the purposes of part (2), if a city can regulate which sound equipment is used, who, and when they use it at a band shell event in a park, then a University can regulate who uses amplification at their on campus events.

In effect, however, Spears argues that the restriction was an unreasonable interference because his amplification was not disruptive. However, whether Spears' amplification was disruptive or not does not affect the Court's conclusion. Rather, the restrictions on sound amplification were content-neutral. *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) (the restriction was "without reference to the content of the regulated speech"). The restriction was not an unreasonable interference because, if any person could have constitutionally used amplified speech at the Festival, then the UA could not have prohibited anyone from amplifying their speech. The restriction was reasonable to prevent the chaos and combined disruption that may have resulted without reasonable restrictions. As summarized by Defendants, the "restriction on unauthorized amplification at the Festival allows all to be heard, and prohibits persons like [Spears] from drowning out the speech of others." Reply (Doc. 50, p. 5).

Moreover, in the circumstances of this case, the Court agrees Spears' amplification

was per se disruptive. More than 130,000 people attended the Festival on the UA Mall. (Dkt.44, ¶ 17.) Thousands of people were moving among the booths and exhibits and Spears was seeking to amplify his voice to people 10-15 yards from him; i.e., "to effectively communicate with the throngs of Festival attendees." SAC (Doc. 44, pp. 5, 9). As stated by Defendants, "a human voice intended to grab the attention of passers-by up to 15 yards away is not speaking in a 'normal conversational' tone, but is tantamount to shouting." Reply (Doc. 50, p. 6). In light of the number of people, booths, and exhibits in a limited space, any amplification would disrupt passers-by and the people attempting to discuss the event functions, exhibits, or products.

## VII. *Due Process*

Spears also alleges that Defendants violated his right to due process. However, Spears' alleged infringement of the right to free speech does not provide the basis for a due process violation. The Supreme Court has determined that, "where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., for plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001). As the First Amendment provides for free speech protection, Spears may not additionally base a due process claim on a violation of his right to free speech.

Moreover, the amplification policy was not unconstitutionally vague or overly broad. The policy provided that persons not affiliated with the Festival were not allowed to amplify sound within and during the Festival. This policy and its enforcement is clear and certain. *See e.g. Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."). The policy provided notice to persons of ordinary intelligence a reasonable opportunity to

- 9 -

know what was prohibited, *id*. at 108; *Sessions v. Dimaya*, — U.S. —, 138 S. Ct. 1204, 1212 (2018), and it is "unlikely . . . that speakers [would] be compelled to steer too far clear" of forbidden speech or conduct because of this policy. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998). The public was not left to guess what is proscribed by the policy. *Edge v. City of Everett*, 929 F.3d 657, 665 (9th Cir. 2019).

Further, under the facts of this case, the policy does not reach "a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) ("[i]n a facial challenge to the overbreadth ... of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail."); *see also N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988) ("[t]he overbreadth doctrine is 'strong medicine' that is used 'sparingly and only as a last resort.'"). While the policy prohibited amplified speech, it did not prohibit speech in general. Additionally, the policy advanced a legitimate purpose of preventing unreasonable interference or disruption of campus activities and "it is at least fairly debatable" that the decision to adopt [the policy]...was rationally related to those interests. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir.1994) (citations omitted). The Court finds the SAC fails to state a due process claim upon which relief may be granted.

VIII. *Qualified Immunity*

Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court must determine "whether, in light of clearly established principles governing the conduct in question, [defendants] objectively could have believed that [their] conduct was lawful." *Watkins v. City of Oakland*, 145 F.3d 1087, 1092 (9th Cir. 1998).

Here, the alleged facts do not show Defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002). Furthermore, a right to amplify sound in these circumstances was not "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Anderson v. Creighton*, 483 U.S. 637, 640 (1987). The Court finds, even if Spears had stated either a First Amendment or due process claim, Defendants would be entitled to qualified immunity.

## IX. *Miscellaneous Issues*

Defendants raise additional issues in their MTD. As the Court has found Spears has not stated a claim upon which relief may be granted and Defendants are entitled to qualified immunity, the Court declines to address the additional issues.

## X. *Conclusion*

The Court finds Spears has not stated a claim upon which relief may be granted. Further, based on the allegations and arguments presented to the Court, the Court finds there is no basis to conclude a more carefully drafted complaint *might* state a claim. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991). The Court, therefore, will dismiss the claims and this action with prejudice.

Accordingly, IT IS ORDERED:

1. The Motion to Dismiss (Doc. 48) is GRANTED. Counts I and II of the Second Amended Complaint and this action are DISMISSED WITH PREJUDICE.

2. The Clerk of Court shall enter judgment and close its file in this matter.

DATED this 20th day of August, 2019.

Cindy K. Jorgenson
United States District Judge